No. 23,565.

THE SOUTHWESTERN COAL COMPANY, *Appellant*, v. R. CALBECK, *Appellee.*

SYLLABUS BY THE COURT.

1. DAMAGES—*Failure to Accept and Pay for a Carload of Coal—No Completed Contract Proven.* Defendant mailed plaintiff an acceptance of a written offer for the delivery of a certain car of lignite coal in transit, adding: "If you can't send this car, send another at once." Plaintiff had sold the car in transit, but ordered another at the mines in Colorado, and notified defendant. That car arrived at plaintiff's railway station four weeks later when lignite coal could not be sold at any price, and defendant refused to accept it. Earlier in the season when there was such a demand for any kind of coal that lignite coal could be readily sold, defendant had accepted a car from plaintiff after a delay of six weeks. *Held,* in an action to recover for the price of the coal, the acceptance of a former car under different conditions could not be relied upon as establishing a usage or custom binding upon defendant, and *further held,* that the delay of four weeks relieved defendant of any liability.

2. SAME. Defendant made no reply to plaintiff's acknowledgment of the acceptance of the first offer and the notice that another car had been ordered. *Held,* that because the plaintiff's second communication introduced new terms and conditions, the minds of the parties never met upon a contract.

Appeal from Pratt district court; GEORGE L. HAY, judge. Opinion filed March 11, 1922. Affirmed.

*R. F. Crick,* and *L. G. Turner,* both of Pratt, for the appellant.
*William B. Hess,* of Pratt, for the appellee.

The opinion of the court was delivered by

PORTER, J.: Plaintiff sued to recover damages for defendant's failure to accept and pay for a carload of coal. A demurrer to plaintiff's evidence was sustained, and it appeals.

The Southwestern Coal Company buys coal from mining companies and sells to local dealers. On January 14, 1918, it had pur-

chased a car of lignite lump coal loaded on car No. 37375 which was in transit, and on that date mailed from the office at Wichita a number of postal cards with return cards attached offering this car of coal for sale to the trade. On January 14, the defendant mailed the return card to plaintiff ordering plaintiff to ship car No. 37375 "now in transit" and added thereto the following: "If you can't send this car, send another at once." When this was received by the plaintiff it had already sold that car to another customer. On January 16, it mailed an order to the mines in Colorado for another car of the same kind of coal to be shipped, not to the defendant but to the plaintiff, in order that plaintiff might know where the coal was at all times and be able to sell it to any customer it desired. A carbon copy of this order was mailed at the same time to defendant, except that there was added to the copy the following: "Sold to R. Calbeck, at Pratt, sold by postal 14th, price 4.10 FOB."

It also sent to defendant a letter acknowledging receipt of the order, and stating that all orders were accepted subject to prices authorized by the government at the time of shipment, and to all the orders of the federal fuel administrator regulating the movement of coal; stating further, "we will not be responsible for damages, loss or delay to shipments in transit, nor for delays on account of labor troubles, car shortages, or other contingencies beyond our control. Mine weights shall govern settlement. Cancellation will not be accepted after cars have been set to mines for loading." The defendant made no reply to these communications.

The car was not shipped from the mines until January 31 and did not arrive at Pratt until February 13, a month after the defendant had sent in his order. The sales manager of plaintiff testified that during the winter of 1917-1918 there was a remarkable shortage in coal and all dealers were glad to get any grade of coal and the demand for lignite at that time was good, as the mines were not able to supply enough coal to fill orders; "that most any kind of coal, even lignite, was in demand and eagerly bought." He testified that the term "at once" was used among the coal trade as meaning the order to be entered for shipment as quickly as conditions would permit shipment to be made; that the plaintiff had no control over them and that no definite date of shipment was meant by the term "at once."

The evidence showed and it is conceded that at the time the car in question arrived at Pratt there was no longer a market for that kind of coal; that lignite lump when exposed to the air soon turns into slack; and that in consequence of the delay of the shipment of this car it was a total loss to be borne by someone; it could not be sold at any price. The same witness testified that defendant had purchased from plaintiff one car of the same kind of coal during the early part of that winter, and had made no objection to a delay of about six weeks in filling the order. This is explained, however, by the testimony to the effect that there was such demand for any kind of coal at that time that defendant could have had no reason to object to a delay so long as he could readily dispose of the coal shipped under those conditions. The testimony shows that the general coal situation had improved to such an extent at the time the car in controversy arrived in Pratt that there was no market at all for lignite coal.

We do not believe the plaintiff can rely upon the acceptance of a former car earlier in the season (under wholly different conditions) as establishing a custom or usage between the parties that would bind defendant to accept the car in question after such a delay.

The order signed by the defendant was for a particular car of coal in transit, with the following modification: "If you can't send this car, send another at once." The order was for a particular car of coal in transit, or for some other car in transit to be shipped "at once"; not a general order for a car of coal. When plaintiff found that the particular car had been sold, instead of diverting another car in transit, it merely placed a general order with the mines for a car of coal with full knowledge that the particular kind of coal could not be sold at any price except for the abnormal demand existing at that time. On receipt of the defendant's order plaintiff mailed to defendant what it terms an "acceptance," and it is contended that on receipt of this, defendant should have canceled his order, if not satisfied with the new terms and conditions offered by the plaintiff. The so-called "acceptance" introduced a number of new elements varying from the original offer; and the mere refusal of defendant to reply to the new proposition would not bind him to a contract containing the new conditions. (*Hayes v. Possehl*, 92 Kan. 609, 141 Pac. 559; *Spiher v. Johnson*, ante, p. 339, 203 Pac. 696.)

The demurrer was rightly sustained and the judgment is affirmed.